with me in court today is Ms. Donna Elm, who is the trial lawyer for Mr. Vasquez-Torres. With the Court's permission, I'd like to reserve three minutes of my time for rebuttal. All right. Keep your eye on that, because we won't remind you. Thank you, Your Honor. There was no physical evidence in the trial of Mr. Vasquez-Torres that implicated him in any kind of drug dealing. There were fingerprints on the physical evidence that was introduced, but not only did those fingerprints not match Mr. Vasquez-Torres, it was stipulated that they excluded him as the source. There were civilian witnesses who were present at the scene of the surveillance and arrest who testified. None of them implicated Mr. Vasquez-Torres in drug dealing. The only way the government was able to make a case against Mr. Vasquez-Torres was through the testimony of police witnesses, and that testimony was corrupted by vouching so egregious that the government ---- The counterfeit money, $16,100 found next to his wallet, could be taken by a trier of fact to indicate that he was readying to purchase something with the counterfeit money, correct? Your Honor, the counterfeit money stood in the same regard as all of the other physical evidence in that it was only connected to Mr. Vasquez-Torres through the testimony of the voucher witnesses. Secondly, there was some corroboration by Ms. Perea that Mr. Torres, Vasquez-Torres was in Apartment 3, not in Apartment 1, which was contrary to his story that he was in Apartment 1 and it was all planted by the cops in Apartment 3. Well, when you say his story, he didn't testify. His little sister testified that they were arrested. Pardon me. His story as relayed by his counsel. Well, his counsel indicated that, in fact, his counsel came straight out in closing argument and said perhaps Mr. Vasquez-Torres was in Apartment 3 right before the cops ran in as a customer. Maybe he was there buying a small quantity of drugs for personal use. Of course, that was not one of the charges in this case. He was charged and convicted for being a large-scale drug dealer. Was there a basis for that, or was that just kind of an inference that was raised? The counsel was inviting the jury to draw that inference as a possible contrary inference to what the government was asking them to draw, which is that Mr. Vasquez-Torres was actually dealing drugs that evening. Of course, the charge was not simply that he was there. Ms. Perea testified, indeed, as Judge as Your Honor points out, that she met with him just before the raid in Apartment 3. However, she said she didn't see drugs in that apartment or him selling drugs. She simply said he was there. So, again, you referred to the counterfeit currency. We've argued, of course, that that really had no relevance. The judge at the end of the trial said nothing was ever shown that connected this counterfeit currency to the crimes that were charged in this case. I'm not even going to think about it for sentencing. Other than the police officer's testimony, which you say was tainted by the vouching by the prosecution. Absolutely, Your Honor. Even with that, it still wasn't connected. Even if you accept the vouch testimony, it still wasn't connected. But, of course, your point is, of course, the more fundamental one to the vouching argument we're making here. There was nothing to link him to that counterfeit currency except the officers claiming that they saw him coming in and out of Apartment 3 dealing drugs, him specifically holding a weapon and being there amongst all that contraband. So as in the case of Wetherspoon, as in the case of Combs, as in another further line of cases. Well, Wetherspoon's a little bit different from this case. Let's compare the two. In Wetherspoon, the vouching took place several times. Here it took place once. In Wetherspoon, the U.S. attorney also gave his personal opinion that the voucher the officers were telling the truth. Here that didn't happen. Here, because there was no objection at trial and no request for an admonition that the jury ignore the vouching, we review under plain error. We don't retry the case. That means it has to be error, plain error, under Olano, and the third element being that it would be such error that it would taint the jury verdict as being not give us no confidence that justice was done. All right? Now, don't you see a difference between a one-time mention of why the officers should not lie because their careers are beyond the line and the Wetherspoon situation? Your Honor, I accept the fact that those are all distinctions, and here's why I don't think those distinctions should lead to a different result in this case. Your Honor referred to vouching occurring on several occasions. That's true. That's the case in Wetherspoon. There were two clear instances of vouching in the closing rebuttal in this case, and there was a further pattern throughout the trial which we mapped out in our brief, 12 instances overall apart from the vouching, where the prosecutor telegraphed his personal opinion to the jury, expressed contempt, scorn, sarcastic comments about the defense theory conveyed to the jury through the mode of questioning. He hadn't. Well, wait a minute. You're not saying that when the U.S. attorney says, I don't think you should believe the defendant, that means he's vouching for the officers? Absolutely not, Your Honor. What the prosecutor did was ask things in an exaggerated way. He said to one of the government witnesses, did you think satellites linking up would have been a test that you needed to do, openly conveying his scorn for the defense theory? That's not a vouching, is it, though? It's a different kind of misconduct. It doesn't fit into the same category. Another point that Your Honor asked about was the personal opinion. Again, I think the personal opinion of the prosecutor is patently clear. From this record, if you read this transcript and look at those portions we've highlighted, you don't have to guess about the prosecutor's personal opinion. He telegraphed it to the jury over and over again. And finally, Your Honor pointed out the plain error standard. Objections were made in Wetherspoon. Objections were made to much of that other misconduct in this case. The important point to recognize is that in Wetherspoon, the Court said, we will apply and find satisfied the plain error test in this case. They said there was a question whether they should apply plain error or harmless error, and they said, you know what, we don't have to decide that, because this is clearly plain error. Another point about the plain error standard is Your Honor quoted the generalized plain error standard, that the specific type of plain error standard or the way that standard is focused in this specific issue of vouching and whether it should be reversible is articulated repeatedly in this Court's case law, including in Wetherspoon. Excuse me. Finish your answer. In Wetherspoon, the standard is identified as whether the vouching so affected the jury's ability to consider the totality of the evidence fairly that it tainted the verdict and deprived the defendant of a fair trial. Was any objection raised during some of these other remarks besides the closing argument in Rabeau? Yes, Your Honor. Many objections were raised. I think most of the other misconduct and telegraphing of personal opinion we identify was objected to. And in some cases, the objections were upheld. In some cases, the objections were not upheld. Well, does it matter when we review that the vouching was done in rebuttal and that what it was rebutting were statements made in advance? Your Honor, it matters in the sense that I think it makes it more prejudicial when it comes in the rebuttal just before the jury is sent off to the jury room to deliberate. Well, the defense argument was coming just before the jury was sent off. He didn't need to rebut until he heard the defense argument. And did the defense argument raise any questions? I'm not suggesting that when you open the door, you can do whatever you want to do, but were there – does this case, in your view, differ from the usual vouching cases? I don't think it differs in a meaningful respect from Witherspoon and Combs. I think it's very much on all fours with those two cases. If Your Honor is talking about whether this is – it could be put into the category of a situation where the vouching, while improper, is in the end of the day applying the prejudice standards seen as righting the scales of justice, what's sometimes referred to as invited error, the answer is certainly not. The Court made very plain in Witherspoon, and has made plain many times, that proper argument by defense counsel, notwithstanding how extensively it urges the jury to reject the testimony of government witnesses to find that they're lying or they're simply not telling the truth, et cetera, et cetera, as long as it's based on urging inferences from the evidence, which was solely what the defense counsel did in this case, does not open the door or legitimize any kind of voucher-improper conduct. Kennedy. No one is going to criticize defense counsel had a client to represent, but she had a client to represent. But what happened in this case was an attempt to discredit all of the evidence because it came from police rather than because it came from a different source. Now, is that a fair statement of what was done? I would not – I would differ with that characterization. I think that the – in fact, some of the key witnesses for the – Let's take it stepwise. Was there an attempt to discredit the evidence? There was certainly an attempt to discredit some of the government's witnesses. Absolutely. Was there an attempt to discredit the evidence? The physical evidence? I'm sorry. Go ahead. I'm not trying to fight you on this, Your Honor. There was a very concerted attempt to discredit the testimony of the government's witnesses. If Your Honor is suggesting that the suggestion was made – An attempt to discredit the evidence of the government witnesses. The government witnesses were not going to be recalled to be – the government witnesses had been cross-examined. Isn't that the usual time in which you question, not during a statement, a summation at the time the case is over and the witness has been excused? The usual time that you question their credibility when they're cross-examined? Everything else you want to do about the witness. You do it during the testimony. You don't do it during a speech at closing argument. If the speech is made, I gather you want us to say the defense counsel can make any speech he wants to make disparaging government witnesses and the government is helpless to respond. Isn't that what you want the ruling to be? If the – if you mean – if what you mean by disparaging is here are some reasons based in the evidence not to believe what they told you, absolutely, yes, that is my position. If what you mean by disparaging is casting aspersions on them as people, suggesting that they have some ulterior motive when there's no basis in the evidence for suggesting that, no, I do not think that is proper. As you say, it wouldn't open the door to vouching even if it were improper and it was done here. But the fact is that none of that was done here. Counsel simply pointed out inconsistencies, conflicts, illogicalities, and it's not only conflicts between external things or physical evidence and what the police witnesses said. The defense's key witnesses included police witnesses, other police officers who were called onto the scene after the arrest was done and they told the story about the circumstances that directly conflicted with the story that was told by the arresting officers, which was the glue that held the government's case together, which was absolutely crucial to the government's case. They said they gave a description of the circumstances that matched the description given by my client's little sister, Diana Vasquez. She said the officers came in and arrested them all. They had them sitting on the floor inside of a furnished apartment with their family members around them. The officers who came on the scene later, who were not the glue to the government's case, backed up that story. They said that they went in and saw two guys under arrest sitting inside of a furnished apartment with family members around. The officers on whom the government's case rested said that the arrest, the two individuals who were arrested were held outside of an unfurnished apartment and were never taken they were not held inside. So those people who came afterwards, notwithstanding that they were their colleagues, they were fellow officers, were not backing them up on that. There was a sharp contrast. And the defense theory was not simply reject anything government agents tell you because they work for the government. Quite the contrary. It was believed some of those who testified to you and look at the conflicts that they raised with the things that the government is asking you to accept as a basis for finding Mr. Vasquez-Torres guilty. There were some suggestions that certain things in the evidence would allow this case to stand even without the voucher testimony, but as I pointed out, everything that managed to link the other evidence to the defendant and suggest that he was the scales, these drugs, et cetera, et cetera, this weapon in conducting drug dealing was only held to him, made applicable or relevant to him by that voucher testimony. And that is what requires under the standard set, Weatherspoon, under the standard in Combs, that it be reversed for plain error because, as this Court has observed over and over again, where the voucher testimony, the testimony that's corrupted and tainted by that improper vouching is crucial to the government's case. But it was the defense position in the case that the officers lied about what happened, right, even though she didn't say they actually lied, but they didn't tell the truth, right? And then what does the government do that would be proper to rebut that, say, well, look at the evidence? That's all they can say, I suppose, right? Absolutely right, Your Honor. Do the same thing the defense does, but do it in the other direction. Except the defense can't do that. The defense says, well, they didn't tell the truth about it. The defense is arguing that the You're saying that the prosecution cannot say they did tell the truth, right? That's vouching. Well, it gets into some fine lines. This is not a difficult case because almost exactly the same vouching has been held blatantly improper. But there are fine lines out there. If the government were to say the evidence shows that these witnesses were not lying, that's proper. That's a statement based on the evidence. Even the evidence is primarily based upon their testimony, right? I mean, you're saying that there was no corroborative evidence here, that there were no fingerprints found in there and your client didn't live there and so forth. Absolutely. Absolutely. That testimony of those particular government witnesses was absolutely crucial to the government's case. And if the defense attacks the credibility of key government witnesses, the government is perfectly free to argue based on the evidence that the testimony of those key government witnesses should be believed and to attack in a proper way based on the evidence, whatever it is the defense counsel has said. But in making that attack, the government cannot place the prestige of the government effectively behind that witness and invite the jury to reject the defense attack on their witnesses based on matters that are not part of the record before them. That's the error in Witherspoon, in Combs, in this case and in many others. And I'm going to reserve the balance of my time for rebuttal. Unless there are further questions. Mr. Drake. Thank you, Your Honor. May it please the Court. My name is Daniel Drake. I'm an assistant U.S. attorney in Phoenix, Arizona. The fairness and integrity of this proceeding was not altered by about ten lines in a 38-page closing argument at the conclusion of a five-day trial. Defendant focuses on those ten lines and pays scant attention to the other factors this Court must consider. Now, in Witherspoon and Combs, the government will acknowledge this Court has said statements like those made here were vouching. But it must be considered in the context of the entire trial, and that's a five-day trial in this situation. In a creative effort to bolster his argument, defendant drags a number of other instances up that he says prove misconduct on the part of the government. And let me deal with those for a second because they don't hold water, and I'll show you why. First, he faults two rhetorical questions that were placed to Officers Erick and Hooker as to whether they were lying. In Nekochea, this Court has held that it's not improper to ask a witness if that witness is telling the truth. It may be improper to ask if another witness is lying because you don't know that, but it's not improper to ask if you're telling the truth. So those two things are out. He next argues that the prosecutor flaunted the district court limitation on the impeachment of Perea. Now, the district court had previously had, outside the presence of the jury, a little hearing about what could be done to impeach Perea because she had some prior convictions and limited what could be done. Perea comes in and testifies, and she says she is there. She points the defendant into the apartment three, says he's in that room, and she said she didn't see any drugs there. At that point, the testimony has changed somewhat, and it goes into a different vein. The prosecutor then asks her about the nature of her conviction. There is an objection. It's overruled, and the district court tells the witness to go ahead. He pursues that point, and another objection is asked or raised, and again, the district court overrules it. So I would disagree heartily with his argument that the prosecutor flaunted the district court's limitation. The district court approved what was going on by overruling the objections. Then there are four permissible points, inferences that were argued or raised in questions by the prosecution. He asked Perea if she was there to make a transaction. Well, these officers have watched drug deals go on. Perea says she was there. She's got a conviction for inhaling vapors or things of that sort. So it's an appropriate question. It's an inference based on the evidence. He argues that Perea was coming to visit her drug dealer, and again, that's a permissible inference. He argued that the defendant might be in a position to cover the rent for the apartment, and that would be a basis why Diana Vasquez, his sister, might like the defendant out and available. That's a permissible inference based on the $3,300 and the $3,100 in his pocket. The — he argued that the counterfeit currency showed this was no fly-by-night operation. And again, that's a permissible inference. So we've knocked out a whole bunch of those. Then he faults the government for going back to one of the officers and asking him if he was sure that the people were in or out of the apartment. And the officer said, you know, I really can't remember. And that's the way it happens every day in courtrooms around this country, that you have to go back to a witness to clarify something that may have been muddled. And then he suggests that the prosecutor re-asked questions different ways when dealing with Caceres. There was an ask-and-answer objection, and it was overruled. In fact, in all the instances he cites, there is only one objection that was sustained, and it was to ask and answer. And that's with another witness. So he has not shown a pattern of misconduct on the part of the prosecutor. Now, let's talk about the vouching for just a minute, because what you have to identify is the impact that that might have had. The suggestion is that because the prosecutor came back and argued that these men might lose their careers, that that twisted the verdict, that that caused the verdict to be unreliable, and that the case, therefore, should be reversed. If you take those ten lines out, it doesn't change the outcome of the case. If you put them in, it doesn't change the outcome of the case. Debbie Perea puts the defendant in Apartment 3. She puts drugs in Apartment 3. I'm sorry, she does not. The defense does. The defense concedes that there were drugs in Apartment 3, that there was cutting agent, that there were packaging materials, that there were scales to weigh the drugs, five separate scales, that there was a gun in the apartment. They concede all of that. Kennedy. Where is the evidence that any of that had any connection with Vasquez Solis? There isn't any fingerprint evidence that does that. I mean, no co-conspirator or no co-defendant said he brought them in and they were his and he's Mr. Big. There's no evidence to tie the defendant to the artifacts used in the trade. Well, there's no physical evidence. Debbie Perea. There's no physical or testimonial evidence. Well, I beg to differ. There is in the form of the officers. Yes, okay. Okay? And when you look at the vouching, you don't discount and take all of their evidence away, which is more or less what the defense was trying to do in the case by discrediting the officers. What you do with the vouching is you try to evaluate whether the impact of the vouching caused the officers to be believed when they might not have been believed, whether it caused the jury to be unable to assess the evidence fairly. Is your position that there was vouching, but it was not so improper to cause reversible error here? Yes, Your Honor. And I think that's because you have to look at everything as a whole. And the Court asked some questions about the back and forth of this argument and the way that this matter proceeded. First of all, unlike many of the other cases that were cited by the defendant, none of the vouching in this case occurred until after the defense had made its closing argument. And in its closing argument, it said things that I suggest were not fair inferences from the record. Were they objected to by the prosecution? They were not. There were objections. There were a number of objections made during closing argument. And if you look at the bulk of the defense closing argument, there were a number of objections raised by the prosecution that were overruled. And it was fairly clear at this point that nothing was going to be sustained. The judge was going to let the defense say whatever they wanted. Yes. Everybody's going to say what they get to say. The first thing I want to point out is a reference that the defense said, in essence, that you're trying to salvage something. And it goes like this. She says that the police are watching the apartment, and people come streaming out of there like ants fleeing an anthill. And suddenly the police realize they've been found out, and now they have to try to salvage what they can't. Well, that suggests that the police have to do something to salvage it. For what reason? For what purpose? There's nothing that supports that. She then goes on and says, you remember the reason they went in there. They said they went in there because of hot pursuit. They can go in. Hot pursuit allows them to do that. You go in and you find a whole bunch of good stuff, all those drugs, the money, the guns, and shoot. They didn't have any reason to go in there. They didn't have hot pursuit. So they fudge. You fudge because you want those drugs. And, ladies and gentlemen, I hesitate to use the word lie, but what they were saying, and that was not true. So she's talking, again, about the officers fudging in order to get the drugs and the evidence and to get it in. So you say because the defense suggested some ulterior career advancing or bureaucratic purpose to the bust, that opened the door to vouching? Vouching is never proper. And I will concede that. The prosecutor should not have said what he said. But the court has to look at this in the context of the trial as a whole and decide whether what the prosecutor said altered the outcome or might have altered the outcome. And under the circumstances, would you attack the jury? I mean, you were saying, you know, why would these cops risk their whole careers? That prosecutor was right. They wouldn't lie. They wouldn't risk being had up on perjury charges and losing their pensions. So I guess we better believe what they said. Is that so difficult to conceive of? Well, if that was the only thing that we had to work on, I can see where you're going with that. But don't forget, the prosecutor twice in his summation and twice in his closing reminded the jurors that they were his statements weren't evidence, that they were to listen to the judge's instructions, to do what the judge directed them to do. And before this issue arose and after it, he told the jury, look, this has to do with credibility, and you're here to determine credibility. You're the judges of that. And so I suggest that those statements and that prefatory statement that I'm not here to vouch, which was not in Combs or Weatherspoon or any other cases, I think that distinguishes what we have in this circumstance. What's the best case that you have to show that this is not reversible error? There are two cases that I will point to. The first is Molina. In Molina, cited in our brief, and let me see, where is it? Well, I've seen it. Okay. In Molina, the prosecutor referenced the fact three witnesses had testified, and he said, so you make up a story, you attack the police. He said it's easy to attack two or three. You don't attack nine or ten. In essence, he's suggesting that they had other agents, and he did say they had other agents on surveillance out there who could come in and testify. In Molina, the Court affirmed. Next, in Das, you've got a situation in Das where, and that's D-A-S. I may be mispronouncing it. In Das, the Court went on to say that the government said the witnesses would be prosecuted for perjury if they didn't testify truthfully, and that was upheld. So in both those cases, I think we've got two situations where, one, it's promising evidence that's extra record, that other witnesses will come in and bolster, corroborate what our witnesses said, and that's in Molina. And the other one is Das where they said they'd be prosecuted for perjury, and that was affirmed. So what you have to do is look at the record as a whole. And if you go back and you look at the record here, there is evidence in that room. The defendants were seen going into that room and coming out of it by two different officers. There are radio communications between the two surveilling sets. Kim and Colin are over here, and George and Jones are up here. The radio call comes from this car that somebody's coming in. These officers see somebody come in. They're communicating about it that way. Then the officers in this car say, the guy, they're out of the apartment. We're going to make contact. So these two officers start to come up. These two officers approach. That's when the arrests take place. There's flight. There are drugs thrown down. And one officer, Kim, takes Otero Soto to the ground because he stumbled and jumps on top of him, and Colin, the other one, goes inside or waits at the door. And when Jones and George come around, they see Kim on the ground with somebody, and they see Colin standing at the door. And that's when they go in and they arrest the defendant in the room. Let me ask you this, Counsel, Mr. Drake. The testimony was that Mr. Vasquez-Torres came out carrying a weapon when there was a backfire. Yes. And then went back in the room with a weapon, apparently, right? Was he charged with the possession of a firearm during the commission of a drug trafficking offense? I don't think so. That wasn't a charge. Yeah. Certainly he wasn't convicted of that, right? Now he was charged with possession of a firearm in front of a drug trafficking crime. And was he convicted of that? Yes. Oh, okay. Then that answers my question. You know the difficulty as we review the case, and you tell me whether this is something we have to concern ourselves with. The prosecutor was there during the trial. He was there during the argument of the defense. He might have made a different argument, and I suppose you now recognize that a different argument might have been desirable. But he didn't. He vouched. And when we look at it, do we – how can we say that vouching wasn't necessary in order to gain – bring about the conviction when the prosecutor who was sitting there felt that vouching was necessary in order to ensure the conviction? Okay. The answer is this. The prosecutor came to the voucher, and this Court has a different role in terms of examining it. You have to look at the back and forth that occurred to decide whether that comment, those few lines, changed this case. If you take those few lines out of that argument, the argument's clean, everything goes forward. You put those few lines in, it does not change the tenor of the case. It does not make the witnesses believable or more believable. These officers testified. The jury had a chance to examine them. This Court, as it reviews the case, has to – whether rightly or wrongly, had raised some questions regarding the officer's testimony that the jury could have pondered over. Isn't that pretty much the status of the record? I believe that's correct, Your Honor. And efforts by the prosecutor to get an objection sustained failed, didn't they? Yes. So he felt on this record he's got to bolster the position of the police officers who testified. And he did bolster it. Well. By talking about their pensions and other reasons that they wouldn't lie. So it's not just a simple case, is it? Well, if all you looked at was whether there was vouching as an indication that the prosecutor thought that he needed to vouch, then virtually every case in which there was vouching would be reversed. Yeah, but you see, if we don't reverse, then the prosecutors feel like there's no risk. We've got something slipping away from us. If we pull it back, the court on appeal will say we're firm. And if we don't pull it back, we're going to lose. Well, I can tell you, maybe this is vouching, but I can tell you that the ---- No, you can vouch. Oh, okay. Okay. I don't think ---- Let the vouching go here. I don't think the prosecutor in this case is going to vouch again. I think he's gotten the message. And one of the things that I think distinguishes Wetherspoon to some extent is that there was an objection, and he blew past the objection, paid no attention to it, and went right back to it. And he was a repeat offender. And so in this situation ---- Your bottom line is there's sufficient evidence if the vouching is discounted. Yes, yes. I mean, you've got these four officers, and here, here's part of the irony of this. Well, your time ---- I don't know what your ---- I'm just about up. I've got a minute. All right. Go ahead. He faults the vouching. Four of the witnesses that he vouched for were called by the defense. They were, you know, they didn't testify on his part, and they're the witnesses that he says helped establish his defense. So I think what the Court has to remember is that there is adequate evidence here of drugs, of guns in that apartment. The defendant's ID was in that apartment. And what you end up with is a situation where his own witness put him there, and then the defendant tried to get out from under it by blaming the officers. In this record, on this record, the defendant has not shown that the vouching tainted the verdict. Thank you. Mr. Kaplan, you have some time for rebuttal. Was anything improper about defense counsel's argument, in your view? Absolutely not, Your Honor. And the suggestion has just been made by counsel for the government. I think the suggestion was made that there was something improper and that certain objections that were overruled should have been sustained. I would eagerly invite the members of this panel to review the transcript of defense counsel's argument. You don't have to invite us. We'll do it. Very good. And when you do it, you'll see that. That's what we always do. Very good. Defense counsel was arguing inferences from the evidence. There were objections along the lines of this is just rank speculation. The fact of the matter is each one of those inferences was based in the evidence. And a key distinction to make between those cases in which there was something – again, we all agree you don't invite or legitimize vouching by going overboard. But it's important to recognize there wasn't any going overboard in this case. There are cases in which the Supreme Court and other courts have said that even improper comments by the government may not require reversal, where they can be seen as righting the balance, the scale of justice because of some sorts of comments by the defense. Those types of comments that lead to that situation, they are such things as in the Supreme Court case of U.S. v. Taylor, where a defense counsel said the prosecutor does not believe my client committed fraud. He never believed it. When we take a hard look at the case and we see that there was backfiring, which probably sounded to somebody like somebody fired a gun, and somebody runs out with a rifle to respond to the firing, do we have any – put any – do we consider that at all? You consider that as just more of the vouched testimony. That was the description. No, it wasn't vouching. I'm talking about what happened. You're telling me it didn't happen? Did he get a – did he come out with a rifle, with a – what I call it a rifle, but with a shotgun-like weapon? According to – In response to the backfiring? According to Officer Kim and Officer Colwin, the government's witnesses, he did. Are you saying it didn't happen? I'm saying the evidence that that – the only evidence that that enabled the jury to conclude that that happened was the exact subject of the vouching and the rebuttal clause. No, but are you, as an officer of the Court, saying it didn't happen? I, as an officer of the Court, haven't the foggiest idea whether it happened or not. I only read the record. I wasn't even involved in this trial. And if we read the record, it happened. If you read the record and accept the testimony of those officers for whom the prosecutor vouched, it happened. If you believe them, absolutely. And if the jury were entitled, if the jury could properly draw conclusions from that testimony and we had no complaints about how that testimony was described and conveyed to the jury, we wouldn't have this issue. Was there any other testimony other than those – the testimony of those two vouched for police officers that the gun that they said was in the defendant's possession belonged to him? Was there a registration of the gun? Did anybody else testify that the gun had been there? Absolutely not. Was the weapon found inside the apartment? Yes. And there were fingerprints on the weapon. And not only did they not match my client, they excluded him as the source, even though those vouched officers said they saw him walk out of the apartment after the backfire holding it with both hands. Of course, you can handle a firearm and not leave your fingerprints on it, right? There was testimony to that effect. And I'm not saying that that should end the story. I'm saying that the jury had – that was one among many reasons that the jury had real cause for doubt about that vouched testimony. And one of the other reasons that I referred to and will refer to briefly again is the fact that the colleagues of those officers, their fellow officers came in and directly significantly contradicted their description of the events of that day. In summary, I don't believe there's really been any serious dispute by the government that the vouched testimony in this case was absolutely crucial. And that's why a reversal for plain error is required. Thank you. All right. Thank you very much for an interesting argument. Both counselors did a very good job. Thank you. The matter of Vasquez-Sotos v. USA is submitted.
judges: Farris, Bea, Siler